**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD GIAMMANCO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:14 CV 1739 CDP |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This case is before the Court on the petition of Donald Giammanco for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] A state jury convicted Giammanco of seven counts of first-degree robbery, for which he received a total sentence of twenty years' imprisonment. His conviction and sentence were affirmed by the Missouri Court of Appeals. *State v. Giammanco,* 351 S.W. 3d 247 (Mo. Ct. App. 2011) (Resp. Exh. E). The Missouri Court of Appeals later affirmed the denial of his post-conviction motions filed under Missouri Supreme Court Rule 29.15. *Giammanco v. State*, 416 S.W.3d 833, 836-38 (Mo. Ct. App. 2013) (Resp. Exh. I).

In his petition for habeas corpus, Giammanco asserts six grounds for relief. Two of his claims, that the trial court should have intervened *sua sponte* during the

---

[1] Because Giammanco filed an amended petition, his original petition for writ of habeas corpus [Doc. #1] is denied as moot.

prosecutor's cross-examination and that Giammanco received ineffective assistance of appellate counsel, are procedurally barred. Giammanco's claim that he was deprived of due process when the post-conviction court arbitrarily applied a state procedural rule is denied because it is without merit. The Missouri Court of Appeals addressed Giammanco's final three claims of ineffective assistance of trial counsel and denied them on the merits. Because the state appellate court's decision was not an unreasonable application of clearly established law and was not based on an unreasonable determination of the facts, I will deny Giammanco's petition for writ of habeas corpus.

## Background

The Missouri Court of Appeals described the factual and procedural background of this case as follows:

> Between February 1, 2008 and September 18, 2008, [Giammanco] entered seven banks in St. Louis County and handed the tellers an envelope and a note instructing the tellers to remove the money from the top and bottom cash drawers, place the money and note in the envelope, and exclude bait money, dye packs, or tracking devices. The notes also variously warned the tellers to comply with [Giammanco's] demands so that "no one would get hurt," everyone would "go home safe," or everyone would "get out alive." After handing the tellers the envelope and note, [Giammanco] placed and maintained his right hand inside of his jacket or jacket pocket, leading the tellers to believe that he was armed with a dangerous weapon. After filling the envelopes with money, the tellers returned the envelopes to [Giammanco], and [Giammanco] exited the banks.
>
> Police officers arrested [Giammanco] on September 18, 2008, shortly after he robbed the Commerce Bank at 487 Old Smizer Mill Road.

On that day, Justin Nicholas, a teller, read [Giammanco's] note and placed approximately $12,000 in [Giammanco's] envelope, along with bait money and an electronic tracker. Patrick Higgins, a bank manager who observed the exchange and recognized [Giammanco] from news coverage of the related bank robberies, followed [Giammanco] out of the bank, recorded his license plate number, and provided the information to the police. Within minutes, police officers stopped and arrested [Giammanco] and seized from [Giammanco's] vehicle a white envelope containing U.S. currency, bait money, and a tracking device; a note demanding money; and [Giammanco's] jacket. Approximately thirty minutes later, Mr. Nicholas identified [Giammanco] as the man who presented him the note and took the money from the bank.

A St. Louis County police officer transported [Giammanco] to police headquarters in Clayton, where police officers from various municipalities and an FBI agent interviewed [him]. [Giammanco] admitted to robbing seven banks in St. Louis County [as well as five banks in St. Charles County].

On October 22, 2008, the State filed an indictment charging [Giammanco] with four counts of first-degree robbery. Defense counsel entered an appearance on October 29, 2008, and on November 12, the trial court continued the matter to February 6, 2009 "by consent, pending federal case." On February 11, 2009, the trial court again continued the case "pending outcome of federal case." On April 17, 2009, the trial court continued the case until July 17, 2009 for a plea or selection of a trial date.

On June 5, 2009, [Giammanco] pleaded guilty in the U.S. District Court, Eastern District of Missouri, to twelve counts of bank robbery, which included the seven offenses at issue in the instant case. On July 17, 2009, the trial court continued the case to August 14, 2009, on which date the court scheduled trial for December 14, 2009. On November 17, 2009, the trial court informed the parties that, due to the court's scheduling conflict, it was continuing the case and resetting the trial date "pending case reassignment to another division." The following day, the case was reassigned and, on

December 11, 2009, the trial court held a pre-trial conference and set the case for trial on August 9, 2010.

On January 11, 2010, [Giammanco] filed a pro se motion for speedy trial. At a pre-trial conference on April 23, 2010, the trial court ordered: "Cause remains set for trial 8-9-10." [Giammanco] filed a pro se request for dismissal for cause for violation of double jeopardy on June 4, 2010.

In a pre-trial conference on August 9, 2010, the first day of trial, [Giammanco] moved to terminate counsel "for many reasons, conflict of interest, differences in strategy to proceed forward, lack of communication, lack of preparedness, and many other things . . . ." The trial court denied the motion on the grounds that it was untimely filed. [Giammanco] then moved for a continuance, and the trial court denied the motion. [Giammanco] asserted that the defense needed time to depose witnesses, including the victim bank tellers and police officers and detectives who investigated the case, and alleged "I've asked [trial counsel] for this numerous times and they just say, no, I'm not going to do it." Trial counsel responded, "Judge, we haven't deposed witnesses because we didn't feel it was appropriate as far as our strategy in the case." The trial court then considered and denied Movant's pro se motion to dismiss based on violation of the right to speedy trial.

At trial, the State called as witnesses the seven victim bank tellers; Mr. Higgins, the manager from Commerce Bank on Old Smizer Road; and six police officers and detectives involved in the investigation. [Giammanco], defending on the theory that he did not commit first-degree robbery because he did not threaten to use a deadly weapon, testified on his own behalf. [Giammanco] admitted to entering the seven banks and demanding money, but he denied intending to create the impression that he possessed a dangerous weapon.

The jury found [Giammanco] guilty of seven counts of first-degree robbery. The trial court sentenced [him] to consecutive terms of ten years' imprisonment on counts one and seven, to run concurrently with fifteen-year-sentences on counts two through six and [his] federal sentence of seventy-six months' imprisonment, for a total

sentence of twenty years' imprisonment. This court affirmed [Giammanco's] conviction and sentence. *State v. Giammanco*, 351 S.W.3d 247 (Mo. Ct. App. 2011).

[Giammanco] filed a Rule 29.15 motion for post-conviction relief, which counsel later amended. The motion court found that the record refuted [Giammanco's] claims and denied the Rule 29.15 motion without an evidentiary hearing.

*Giammanco v. State*, 416 S.W.3d at 836-38 (Resp. Exh. I at 1-5).

## Discussion

In his petition for writ of habeas corpus, Giammanco raises six grounds for relief:

(1) Giammanco was denied his Fourteenth Amendment rights to due process and a fair trial when the trial court failed to intervene *sua sponte* in the prosecutor's improper cross-examination of him;

(2) Trial counsel was ineffective in failing to file a motion to dismiss based on a violation of Giammanco's right to a speedy trial;

(3) Trial counsel was ineffective in failing to file a motion to dismiss based on a violation of the Double Jeopardy Clause;

(4) Giammanco was denied effective and conflict-free assistance of counsel and due process of law because his trial attorneys represented him on a *pro bono* basis for the publicity and intended on exerting as little time, effort, and money as possible on his defense;

(5) Giammanco was denied due process when his appointed post-conviction counsel physically attached his pro se post-conviction motion to the amended motion, rather than amending all of the *pro se* claims as well; and

(6) Appellate counsel was ineffective in failing to raise as an issue on appeal that the trial court wrongfully sentenced Giammanco to an aggregate sentence of twenty years in prison, even though the jury recommended maximum sentences of fifteen years on each of the seven counts.

# I. Procedurally Defaulted Claims

State prisoners must fairly present all claims to the state courts. When a prisoner has gone through all stages of direct appeal and post-conviction proceedings without presenting a claim to the state courts, that claim is procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). This means that a federal habeas court cannot hear the claim unless the prisoner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, respondent argues that Giammanco procedurally defaulted his first and sixth grounds for relief by failing to present them to the Missouri courts. If true, this Court may not consider either claim unless Giammanco can meet one of the two exceptions to procedural default. To qualify for the first exception, Giammanco must show cause and prejudice. To demonstrate cause, he must show that "some objective factor external to the defense" impeded his efforts to present the claim to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, Giammanco must demonstrate that the identified errors "worked to his actual and substantial disadvantage, infecting the entire trial with

error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). The second exception requires Giammanco to show that failure to consider the defaulted claims will result in a fundamental miscarriage of justice. To meet this standard, he must present new evidence that "affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006).

<u>Ground One: Denial of Due Process Based on Trial Court's Failure to Intervene During Prosecutor's Cross-Examination of Giammanco</u>

In Ground One, Giammanco alleges that he was denied a fundamentally fair trial and due process when the trial court failed to intervene *sua sponte* in the prosecutor's improper cross-examination of him. Giammanco raised this claim on direct appeal. *State v. Giammanco*, 351 S.W.3d 247 (Mo. Ct. App. 2011) (Resp. Exh. E at 5-9). However, because Giammanco failed to properly preserve this claim of error at the trial court level, the Missouri Court of Appeals reviewed it for plain error only and denied it. Giammanco's failure to properly preserve Ground One for review in the state courts means that it is procedurally defaulted, and the appellate court's plain error review does not cure this default. *See Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) ("a federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed the claim for plain error."). Therefore, this Court may not consider Ground One unless Giammanco can establish one of the

exceptions to procedural default. As Giammanco makes no attempt to avoid the procedural default of this claim, this Court is barred from considering it. Ground One of Giammanco's § 2254 petition is denied.

<u>Ground Six: Ineffective Assistance of Appellate Counsel</u>

In Ground Six, Giammanco alleges that he received ineffective assistance of appellate counsel. Missouri law requires defendants to raise all claims for ineffective assistance of counsel in post-conviction proceedings under Rule 29.15. *Martin v. State*, 386 S.W.3d 179, 185 (Mo. Ct. App. 2012) ("Rule 29.15 provides the exclusive procedure by which a person convicted of a felony may seek relief for certain claims, including claims of ineffective assistance of trial and appellate counsel."). Because Giammanco did not include this claim in his Rule 29.15 motion, he failed to present it to the Missouri courts in accordance with state law and it is procedurally defaulted. Accordingly, this Court may not consider Ground Six unless Giammanco can establish cause and prejudice or that the failure to consider it will result in a fundamental miscarriage of justice. Giammanco's argument that ineffective assistance of his post-conviction counsel constitutes cause to excuse the default is denied. *See Davila v. Davis*, 137 S. Ct. 2058, 2062-63 (2017) (ineffective assistance of post-conviction counsel cannot constitute cause to overcome the procedural default of a claim of ineffective assistance of appellate counsel). As Giammanco does not argue that failure to consider this claim will

result in a fundamental miscarriage of justice, he has failed to overcome the procedural default of Ground Six. Accordingly, Ground Six is denied.

## II. Non-Cognizable Claims

<u>Ground Five: Deprivation of Due Process Based on Denial of Post-Conviction Counsel</u>

In Ground Five, Giammanco argues that he was denied due process when his appointed post-conviction counsel simply attached his *pro se* Rule 29.15 motion to the amended Rule 29.15 motion instead of filing an amended motion which included all asserted grounds for relief. Rule 29.15(e) requires post-conviction counsel to "file an amended motion that sufficiently alleges the additional facts and claims." Giammanco's due process claim fails because he cannot demonstrate that the Missouri courts arbitrarily applied the procedural filing requirements of Rule 29.15 to deny his post-conviction claims. See *Mack v. Caspari*, 92 F.3d 637, 640 (8th Cir. 1996) ("a contention that a state court has applied a procedural rule arbitrarily to a defendant's prejudice may state a federal constitutional due process violation."). Here, the motion court considered all claims raised in Giammanco's *pro se* motion and the amended motion and denied them on the merits. (Resp. Ex. F). Any due process claim therefore fails.

To the extent Giammanco alleges that post-conviction counsel's failure to file an amended Rule 29.15 which included all grounds for relief constitutes ineffective assistance of counsel, the claim is denied as not cognizable in habeas

review.  *See* 28 U.S.C. § 2254(i) ("ineffectiveness or incompetence of counsel during Federal or State post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Price v. State*, 422 S.W.3d 292, 297 (Mo. banc 2014) ("The lack of any constitutional right to counsel in post-conviction proceedings [under Rule 29.15], however, precludes claims based on the diligence or competence of post-conviction counsel (appointed or retained), and such claims are 'categorically unreviewable.'") (quoting *Eastburn v. State*, 400 S.W.3d 770, 774 (Mo. banc 2013)).

Finally, even if counsel violated Rule 29.15(e), this would only amount to, at best, a violation of state law, which is not cognizable in federal habeas proceedings.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) (noting that federal habeas courts "do not second-guess the decision of a Missouri state court on Missouri law").  Ground Five of Giammanco's habeas petition is denied.

## III. Claims Adjudicated on the Merits

<u>Grounds Two Through Four: Ineffective Assistance of Trial Counsel</u>

In his remaining grounds for relief, Giammanco alleges he received ineffective assistance of trial counsel in violation of the Sixth Amendment. Giammanco raised these claims in his motion for post-conviction relief and on

appeal of its denial, and the Missouri Court of Appeals denied them on the merits. *Giammanco v. State*, 416 S.W.3d 833 (Mo. Ct. App. 2013) (Resp. Exh. I).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is entitled to habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

Under subsection (1), a state court's decision is "contrary to" clearly established Federal law when it "applies a rule that contradicts the governing law" from Supreme Court cases, or when it considers "a set of facts that are materially indistinguishable from" a Supreme Court decision yet reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). A state court's decision involves an "unreasonable application of" clearly established Federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. It is not enough for the federal habeas court to conclude that the state court's decision is merely incorrect; rather, the state court must have applied the law *unreasonably*. *Id.* at 411. *See also Schafer v. Bowersox*, 329 F.3d 637,

646-47 (8th Cir. 2003) (explaining the "contrary to" and "unreasonable application of" standards).

Under subsection (2), a "state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings' only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(2)). The petitioner has the burden of making this showing by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Missouri Court of Appeals applied the following standard to Giammanco's ineffective assistance of counsel claims on appeal:

> A movant bears a heavy burden when attempting to show that counsel was ineffective. *State v. Powell*, 798 S.W.2d 709, 717 (Mo. banc 1990). To prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A movant establishes prejudice by demonstrating that but for counsel's poor performance, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694, 104 S. Ct. 2052. A movant must satisfy both the performance prong and prejudice prong of the ineffective assistance of counsel test, and if a movant fails to satisfy one prong, we need not consider the other. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).
>
> To be entitled to an evidentiary hearing on a motion for post-conviction relief, a movant must show that: (1) he alleged facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the

record; and (3) the matters complained of resulted in prejudice to him. *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009). An evidentiary hearing will not be granted when the files and records of the case conclusively show that the movant is not entitled to relief. Mo. Sup. Court Rule 29.15(h).

*Giammanco v. State*, 416 S.W.3d 833, 838–39 (Mo. Ct. App. 2013).

Giammanco's ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test to determine when counsel's ineffective performance violates the Sixth Amendment. On the first prong, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The second prong requires the defendant to "show that the deficient performance prejudiced the defense." *Id.* To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance." *Id.* at 690. "Taken together, AEDPA and *Strickland*

establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d

825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

This means that Giammanco must do more than "show that he would have satisfied

*Strickland's* test if his claim were being analyzed in the first instance." *Bell v.*

*Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [Missouri

Court of Appeals] applied *Strickland* to the facts of his case in an objectively

unreasonable manner." *Id.* at 699.

In Ground Two, Giammanco alleges that his trial counsel was ineffective for

failing to file a motion to dismiss based on a violation of his constitutional right to

a speedy trial. The Missouri Court of Appeals denied this claim as follows:

> In his first point on appeal, Movant claims the motion court clearly erred in
> denying without a hearing his claim that trial counsel were ineffective in
> failing to move to dismiss the charges based on a violation of Movant's right
> to a speedy trial. More specifically, Movant contends that he was not
> responsible for the pretrial delay, he asserted his right to a speedy trial, and
> the delay prejudiced his case because he pleaded guilty to the federal
> charges prior to trial and the State used the guilty plea to refute Movant's
> defense. The State counters that the motion court properly denied Movant's
> claim without a hearing because Movant failed to plead facts not refuted by
> the record demonstrating a violation of his right to a speedy trial or that
> counsels' decision not to seek a speedy trial was not a matter of reasonable
> trial strategy.
>
> "The right to a speedy trial guarantees to a criminal defendant that the State
> will move fast enough to assure the defendant of the early and proper
> disposition of the charges against him." *State v. Bell*, 66 S.W.3d 157, 164
> (Mo. App. S.D. 2001). Deprivation of the right to a speedy trial is not
> considered per se prejudicial to a defendant. *Id.* When considering whether
> a defendant has been deprived of a right to a speedy trial, a court will
> consider the following four factors set forth by the United States Supreme

Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972): (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Myszka v. State*, 16 S.W.3d 652, 657 (Mo. App. W.D. 2000).

To prevail on a claim of ineffective assistance of counsel based on counsel's failure to file a motion to dismiss for violation of the right to speedy trial, a movant must demonstrate that, had counsel filed such a motion, the trial court would have dismissed the case for failure to comply with speedy trial requirements. *See*, e.g., *id.* at 658; *Jarrett v. State*, 313 S.W.3d 172, 174 (Mo. App. S.D. 2010). Based on our review, we conclude that the record refutes Movant's claim that "there is a reasonable probability that had trial counsel filed a motion for speedy trial and then further asserted [Movant's] speedy trial right, the trial court would have dismissed the charges." Although the parties agree that length of the delay, which was approximately twenty-two months, was presumptively prejudicial, the remaining three Barker factors weigh against Movant.

While the docket sheet does not state which party requested the various continuances, the motion court found that the case "was continued from several court pre-trial conference settings to subsequent settings at the request of the defendant and/or by consent of both parties, pending the outcome of Movant's federal case." A motion court's recollection of events at trial may support the denial of a motion for post-conviction relief. *See*, e.g., *Zink v. State*, 278 S.W.3d 170, 185 (Mo. banc 2009). "[D]elay caused by a defendant is weighed heavily against him." *Myszka*, 16 S.W.3d at 658.

In regard to the timely assertion of his right to a speedy trial, "[w]aiting several months to assert the right to a speedy trial has been found to weigh against a defendant." *State v. Newman*, 256 S.W.3d 210, 216 (Mo. App. W.D. 2008). Movant filed his pro se motion for speedy trial on January 11, 2010, more than fourteen months after his indictment. Furthermore, at the time he filed his motion for speedy trial, trial was scheduled for August 9, 2010, and the trial court commenced trial on that day.

"The final and most important factor to be considered in the balancing test is whether the delay actually prejudiced the defendant." *State v. Ferdinand*, 371 S.W.3d 844, 854 (Mo. App. W.D. 2012) (quotation omitted). "To determine whether the defendant has suffered from prejudice that would warrant dismissal for violation of the defendant's right to a speedy trial, appellate courts consider the oppressiveness of pre-trial incarceration, whether it unduly heightened defendant's anxiety, and possible impairment

of the defense." *State v. Scott*, 348 S.W.3d 788, 797 (Mo. App. S.D. 2011) (internal quotation omitted). The last of the three considerations—impairment to the defense—is "most vital to the analysis." *Ferdinand*, 371 S.W.3d at 854. "Impairment to the defense may occur where defense witnesses become unavailable or are unable to recall accurately events of the distant past." *Scott*, 348 S.W.3d at 797 (quoting *Garcia*, 316 S.W.3d at 912).

In his Rule 29.15 motion, Movant alleged no "impairment" to his defense. Movant did not allege that witnesses disappeared, evidence was lost, or witnesses were unable to recall events due to the delay. *See*, e.g., *State v. Simino*, 397 S.W.3d 11, 23 (Mo. App. S.D. 2013). Rather, Movant claimed that his case was prejudiced because, while the state case was pending, Movant pleaded guilty to federal charges involving the same incidents and the State presented evidence of those guilty pleas at trial.

Furthermore, the record refutes Movant's allegation that trial counsels' decision to delay the state proceedings until after resolution of the federal charges was not reasonable trial strategy. In its findings of facts and conclusions of law, the motion court found:

> Movant's counsel's strategy was to resolve the Federal Charges before the State Court charges, so that any sentences on the State Court charges could be run concurrently with the sentences imposed on the Federal charges. Trial counsel believed that if Movant was first sentenced on the State Court charges, the subsequent federal sentences would almost certainly be run consecutive to the State Court sentences. Therefore, trial counsel's trial strategy was to continue Movant's State Court case [ ] to be resolved after the Federal Court case was resolved.

It is not ineffective assistance of counsel to make a reasonable strategic decision designed to benefit a defendant in the sentencing proceedings. *See*, e.g., *State v. Nunley*, 923 S.W.2d 911, 923 (Mo. banc 1996) (holding it was reasonable trial strategy for counsel to have determined that sentencing by the court was preferable to sentencing by a jury). Point denied.

*Giammanco v. State*, 416 S.W.3d 833, 839–40 (Mo. Ct. App. 2013).

The Sixth Amendment grants criminal defendants the right to a speedy trial.

The Supreme Court has deemed this right fundamental and extended it to state

criminal defendants. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). In

*Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Court established a four-factor balancing test to determine when a criminal defendant's speedy trial right has been violated. The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant caused by the delay. None of the factors is either necessary or sufficient to establish a violation of the speedy trial right; rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. The *Barker* Court also emphasized that the right to a speedy trial is "a more vague concept than other procedural rights . . . . We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Id.* at 521.

In denying this ground on appeal, the Missouri Court of Appeals correctly identified the governing legal standards, and its determination that there was no reasonable probability that a motion to dismiss would have been granted even if filed as there was no speedy trial violation was not an unreasonable application of *Strickland* and *Barker.  See* 28 U.S.C. § 2254(d)(1). As the appellate court's determination also did not involve an unreasonable determination of the facts in light of the evidence presented in the  state court proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference. Giammanco's arguments that the appellate court should have decided the factual and legal issues differently are

insufficient to meet the difficult standard of showing the state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (internal quotation marks and citation omitted). Ground Two of Giammanco's habeas petition is denied.

In Ground Three, Giammanco asserts that his attorney was ineffective for failing to move for dismissal based on a violation of his rights under the Fifth Amendment's Double Jeopardy Clause. The Missouri Court of Appeals denied this claim as follows:

> In his second point on appeal, Movant asserts the motion court clearly erred in denying without an evidentiary hearing his claim that counsel was ineffective in failing to move for dismissal based on Movant's right to be free from double jeopardy. Movant contends that "reasonable counsel under the circumstances would have done so . . . because the remedy would have precluded a conviction in state court after the federal conviction had been obtained." In response, the State asserts that the trial court did not err in denying Movant's claim without an evidentiary hearing because "convictions in federal and state courts for different crimes based on the same criminal acts do not violate the Double Jeopardy Clause" and "counsel is not ineffective for failing to challenge existing law."

> The right to be free from double jeopardy, which derives from the Fifth Amendment and applies to the states through the Fourteenth Amendment, "protects defendants from a second prosecution for the same offense after acquittal or conviction and from multiple punishments for the same offense." *State v. Roach*, 391 S.W.3d 8, 9 (Mo. App. E.D. 2012). "However, double jeopardy does not bar prosecution of the same offense by separate sovereign jurisdictions, such as the state and federal governments." *Id.* (quoting *State v. George*, 277 S.W.3d 805, 807 (Mo. App. W.D. 2009)). Missouri adheres to the principle of dual sovereignty, established by the United States Supreme Court in *Abbate v. U.S.*, 359 U.S. 187, 79 S. Ct. 666, 3 L. Ed. 2d

729 (1959) and *Bartkus v. Illinois*, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d
684 (1959), which provides that "a conviction or acquittal in federal court
will not prevent a subsequent conviction for the same offense in state court if
the case is one over which both sovereigns have jurisdiction." *Id.*

Movant acknowledged that, under Missouri law, double jeopardy does not
prohibit convictions in federal and state court for crimes arising from the
same conduct, but he argues that trial counsel should have filed a motion to
dismiss challenging the doctrine of dual sovereignty. However, Movant did
not allege that trial counsels' failure to file a motion to dismiss for violation
of his right to be free from double jeopardy resulted in prejudice to him.
The motion court found that, had trial counsel filed a motion to dismiss
based on a double jeopardy violation, the trial court would have denied the
motion pursuant to the doctrine of dual sovereignty. After reviewing the
record, we conclude that the motion court's findings and conclusions are not
clearly erroneous. A motion to dismiss, for the reasons stated above, would
have been of no consequence, and "trial counsel is not ineffective for failing
to do a meaningless act." *Harp v. State*, 209 S.W.3d 560, 564 (Mo. App.
S.D. 2007). Point denied.

*Giammanco v. State*, 416 S.W.3d 833, 840–41 (Mo. Ct. App. 2013).

Under the well-established dual sovereign doctrine, the Double Jeopardy

Clause is not violated when separate sovereigns, such as the federal government

and a state, each prosecute a defendant based on the same criminal act. *United*

*States v. Lanza*, 260 U.S. 377, 382 (1922). The Supreme Court has repeatedly

reaffirmed that the dual sovereign doctrine permits both the federal government

and a state to prosecute a defendant for the same conduct. *See Bartkus v. Illinois*,

359 U.S. 121, 132 (1959) ("Since Lanza the Court has five times repeated the rule

that successive state and federal prosecutions are not in violation of the Fifth

Amendment."); *Abbate v. United States*, 359 U.S. 187, 195 (1959) (declining to

overrule *Lanza* and "its firmly established principle"); *Heath v. Alabama*, 474

U.S. 85, 88-89 (1985) (explaining the dual sovereign doctrine and noting that the

Court has "uniformly held" that the federal and state governments may each

prosecute a defendant for the same conduct).

In denying this ground on appeal, the Missouri Court of Appeals correctly

identified the governing legal standards, and its determination that there was no

reasonable probability that a motion to dismiss based on double jeopardy grounds

would have been granted because of the dual sovereign doctrine was not an

unreasonable application of *Strickland* and the dual sovereign doctrine. *See* 28

U.S.C. § 2254(d)(1). As the appellate court's determination also did not involve an

unreasonable determination of the facts in light of the evidence presented in the

state court proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to

deference. Giammanco's argument that Missouri and the federal government are

"really" the same sovereign because the state government receives federal funds is

meritless. Missouri's "power to prosecute is derived from its own inherent

sovereignty, not from the Federal Government." *Heath*, 474 U.S. at 89 (internal

quotation marks and citation omitted). As counsel cannot be ineffective for failing

to raise a meritless argument, *see Dyer v. United States*, 23 F.3d 1424, 1426 (8th

Cir. 1994), Ground Three of Giammanco's habeas petition is denied.

Finally, in Ground Four Giammanco argues that he received ineffective assistance from his trial counsel due to a conflict of interest. Specifically, Giammanco argues that trial counsel agreed to represent him for free because of the publicity that his case would generate, and the *pro bono* representation created a conflict of interest between counsel's desire to save money and Giammanco's desire for thorough representation. Giammanco asserts that this conflict dissuaded counsel from taking any depositions or filing any motions in his case to minimize the expense of representation. Giammanco argues that trial counsel should have deposed certain bank employees to impeach the credibility of these witnesses at trial.

The Missouri Court of Appeals denied this claim on appeal as follows:

In his final point on appeal, Movant claims the motion court clearly erred in denying without a hearing his claim that trial counsel were ineffective because they "were under a conflict of interest in this case because counsels' interest in spending the minimum amount of time on a case for which they were receiving no money conflicted with [Movant's] desire that his case be fully litigated and investigated . . . ." The State counters that the trial court did not clearly err in denying this claim because Movant failed to plead facts not refuted by the record demonstrating an actual conflict.

To prevail on a claim of ineffective assistance of counsel based on a conflict of interest, a movant must show that an actual conflict of interest adversely affected counsel's performance. *Conger v. State*, 356 S.W.3d 217, 221 (Mo. App. E.D. 2011) (quotation omitted) (holding that the movant failed to establish that plea counsel coerced him to plead guilty to avoid taking the case to trial). "In order to prove a conflict of interest, something must have been done by counsel or something must have been foregone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to another." *Id.* (quoting *Dobbs v. State*, 284 S.W.3d 201, 205 (Mo. App. S.D. 2009)). "[T]he mere existence of a possible conflict of

interest does not automatically preclude effective representation." *Conger v. State*, 398 S.W.3d 915, 919 (Mo. App. E.D. 2013) (quoting *Helmig v. State*, 42 S.W.3d 658, 680 (Mo. App. E.D. 2001)). Furthermore, "[a] defendant's failure or inability to pay legal fees does not automatically give rise to a conflict of interest." *Id.*

In a pretrial conference on the day of trial, Movant moved to terminate counsel claiming, among other things, a conflict of interest. Movant alleged, "There's been no witnesses deposed that I've asked. There's been no motions filed that I've asked . . . . I've had to file them myself." He further stated:

> I've also asked for witnesses on my behalf to be subpoenaed and refused and, frankly, I'm just told no or I can't afford that, that costs money, when these attorneys took this case on for no cost, for whatever reason that might be, and it's impossible for me to get a fair trial in the sense that we are not prepared for a trial, your Honor.

After the trial court denied Movant's motion to discharge counsel as untimely and also denied his motion for a continuance, this exchange followed:

> [MOVANT]: I need witnesses deposed. I need the tellers deposed, the victims deposed, the police officers and the detectives deposed. I've asked for this numerous times and they just say, no, I'm not going to do it.
>
> [COURT]: Counsel?
>
> [TRIAL COUNSEL]: Judge, we haven't deposed witnesses because we didn't feel it was appropriate as far as our strategy in the case. We have a very narrowly defined strategy, and we didn't think we had any advantage . . . based on deposing those witnesses.
>
> [COURT]: So you considered that as part of your trial strategy?
>
> [TRIAL COUNSEL]: Absolutely.
>
> [MOVANT]: I have a letter here stating that [trial counsel] didn't want to depose witnesses because of costs.

> [TRIAL COUNSEL]: That's inappropriate, Judge. You can read the letter for yourself, I stand by it, that it is not my responsibility to pay for his depositions, but regardless of the costs, strategically, we didn't think it was of value.
>
> [MOVANT]: Your Honor, this gentleman, in a meeting on July 8th, 2010, during a visit to the jail, after we discussed deposing these witnesses and strategies that I would like employ in this case told me that I was going to go to prison for the rest of my life and he would make sure of it. This is my own counsel telling me that?
>
> [COURT]: Counsel?
>
> [TRIAL COUNSEL]: That's a lie. I never told him that.

After the trial court announced Movant's sentence, it questioned him about the effectiveness of counsel. When the trial court asked Movant whether counsel "did everything [he] asked them to do?," Movant restated his complaint that counsel refused to file motions on his behalf and subpoena and depose witnesses, specifically the police officers and bank tellers. In response to Movant's assertion that he was dissatisfied with counsels' representation, the trial court stated: "Well, I observed your attorneys during the trial and observed them, of course, everything that happened before the trial, and I thought they did an excellent job for you. You may disagree with that, but that's my opinion." The trial court found: "[T]aking into consideration all the comments of the defendant concerning the performance of his attorneys . . . the Court now finds no probable cause of ineffective assistance of counsel exists."

Movant alleged in his Rule 29.15 motion that trial counsel "offered to represent Movant for free because Movant's case had a high profile in the media" but this arrangement "created a divergence of interests." More specifically, Movant averred that "counsel did not want to work on the case because they were not being paid" and counsel "tried very hard to convince him to plead guilty . . . not because it was the best thing for him, but because this outcome would limit the amount of free work they would provide to him." Movant alleged that "there was actual prejudice" because "counsel did not file any substantive motions and no depositions or other normal pretrial investigation was undertaken in this case."

In its findings of facts and conclusions of law, the motion court found that trial counsels' failure to depose witnesses did not prejudice Movant and Movant had failed to "allege in what way he was prejudiced in this regard." The motion court explained:

> Depositions are not required to be taken by trial counsel in any criminal case. In Movant's case, he had confessed his guilt to police, had pleaded guilty to the same crimes in Federal Court prior to the State Court trial, was caught on video tape committing each of the robberies charged, and was arrested shortly after the final robbery in possession of the stolen money. No motions to suppress, depositions, or additional pre-trial investigation would have aided Movant or changed the outcome in State Court. This Court finds that based on the evidence adduced at trial, any motion to suppress identification, statements or physical evidence were without merit and would have been denied by the trial court.

Based on our review, we conclude that the record refutes Movant's claim that trial counsel either did or failed to do something that "was detrimental to the interests of defendant and advantageous to another." *See Conger*, 398 S.W.3d at 919. In regard to Movant's contention that trial counsel were ineffective in failing to depose the State's witnesses, trial counsel stated that it was not "appropriate as far as our strategy in the case," which was to argue that Movant did not commit first-degree robbery because he did not threaten the use of a deadly weapon. Furthermore, Movant failed to specify in what way counsels' failure to depose witnesses allegedly prejudiced the defense. Conclusory allegations of prejudice do not establish ineffective assistance of counsel. *See*, e.g., *Curtis v. State*, 759 S.W.2d 860, 862 (Mo. App. E.D. 1988).

As to Movant's claim that trial counsel were ineffective in failing to file motions, this court previously held that the motion court did not clearly err in denying without an evidentiary hearing Movant's claim that counsel were ineffective in failing to file motions to dismiss based on violations of his right to a speedy trial and right to be free from double jeopardy. Movant neither identifies other motions that trial counsel should have filed nor explains how additional motions would have benefited his case. As previously stated, "[w]e will not convict trial counsel of ineffective assistance for failing to do that which would have been a futile act." *Mason*

*v. State*, 189 S.W.3d 708, 710 (Mo. App. W.D. 2006) (quotation omitted). Point denied.

*Giammanco v. State*, 416 S.W.3d 833, 841–44 (Mo. Ct. App. 2013).

The conflict alleged in this case was one of attorney self-interest. "[I]t is unclear whether this sort of alleged conflict of interest requires a defendant to show deficient performance and prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), or whether it is sufficient for a defendant to show that a conflict of interest 'adversely affected his lawyer's performance,' *see Caban v. United States*, 281 F.3d 778, 781-84 (8th Cir. 2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980))." *United States v. Sharp*, 879 F.3d 327, 333 (8th Cir. 2018).

Conflicted counsel may be constitutionally ineffective counsel. *See Atley v. Ault*, 191 F.3d 865, 869 (8th Cir. 1999) ("[T]he right to counsel guaranteed by the Sixth Amendment includes the 'right to representation that is free from conflicts of interest.'") (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). "The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial." *Bonin v. California*, 494 U.S. 1039, 1044, (1990). When an attorney has a conflict of interest, that attorney violates his duty of loyalty to his client and "fails to provide effective assistance of counsel." *Atley*, 191 F.3d at 869 (8th Cir. 1999).

Under *Cuyler*, to establish a violation of the Sixth Amendment Giammanco "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348. He must identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004). Giammanco must show that "the conflict caused the attorney's choice." *Id.* To show an adverse effect, Giammanco must "'identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.'" *Williams v. Ludwick*, 761 F.3d 841, 846 (8th Cir. 2014) (quoting *Morelos*, 709 F.3d at 1252). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 349-50.

Here, the Missouri Court of Appeals correctly identified the legal standards governing ineffective assistance of counsel claims based on an alleged conflict of interest, and its denial of Giammanco's claim because he failed to identify any actions which adversely affected the outcome of the trial was not an unreasonable

application of the law governing attorney conflicts of interest. *See* 28 U.S.C. § 2254(d)(1). Although Giammanco complains that counsel should have taken depositions of certain bank employees, he fails to specify what information he expected the depositions to reveal or how the failure to take these depositions adversely affected the outcome of the trial. Instead, he merely speculates that the depositions might have been useful at trial to impeach the credibility of some of the bank employees who testified against him. This lack of specificity is fatal to Giammanco's claim that counsel's failure to take depositions prejudiced him or adversely affected the outcome of his trial. *See Forrest v. Delo*, 52 F.3d 716, 722 (8th Cir. 1995) (finding no prejudice under *Strickland* when the defendant did not provide "any specifics as to what information his counsel failed to discover from the state's witnesses"). The state prosecutor had an overwhelmingly strong case against Giammanco. He had already pled guilty to the same bank robberies in federal court and was recorded by security cameras in the course of committing each robbery. He was arrested just after the final robbery with stolen money, bait money, and a tracking device, and he did not contest that he committed each robbery with which he was charged. Given all of the evidence against Giammanco, there is no reasonable probability that the outcome of Giammanco's trial would have been different had counsel taken some depositions, or that counsel's failure to do so had some actual and demonstrable adverse effect on the

case.  *See Kennedy v. Kemna*, 666 F.3d 472, 478 (8th Cir. 2012).  Giammanco also

cannot meet the standards of either *Strickland* or *Cuyler* by pointing to counsel's

failure to file motions to dismiss based on speedy trial and double jeopardy

grounds as such motions were meritless for the reasons discussed above.  Counsel

cannot be deemed ineffective for failing to raise meritless arguments.  *See Dyer*, 23

F.3d at 1426.   Giammanco identifies no other motions that counsel should have

filed, and he does not specify how the failure to file these unidentified motions

prejudiced him or adversely affected the outcome of his trial.  Such a lack of

specificity is fatal to his claim.  As the appellate court's determination did not

involve an unreasonable application of the law governing ineffective assistance of

counsel and conflicts of interest, *see* 28 U.S.C. § 2254(d)(1), or an unreasonable

determination of the facts in light of the evidence presented in the state court

proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference.

Ground Four of Giammanco's habeas petition is denied.

## Certificate of Appealability

When a petitioner is denied a writ of habeas corpus under 28 U.S.C. § 2254,

the petitioner may not appeal unless granted a certificate of appealability.  28

U.S.C. § 2253(c)(1)(A).  To be entitled to a certificate of appealability, the

petitioner must make a substantial showing of the denial of a constitutional right.

§ 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A

showing is substantial when the issues raised are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Because I find none of these to be the case, I will deny a certificate of appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Donald Giammanco for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied as moot.

**IT IS FURTHER ORDERED** that the amended petition of Donald Giammanco for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [3] is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2018.